**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | 1-15-44136-ess |
| The Vermeil LLC | Chapter 11 |
| Debtor. | |

**MEMORANDUM OF LAW OF THE BOARD OF MANAGERS OF THE VERMEIL CONDOMINIUM IN OPPOSITION TO MOTION OF JACOB ROSENBERG FOR RELIEF FROM THE AUTOMATIC STAY**

The Board of Managers of the Vermeil Condominium (the "Board"), a creditor and party in interest in the above-captioned case, respectfully submits this memorandum of law in opposition to the motion by Jacob Rosenberg pursuant to 11 U.S.C. § 362(d) for relief from the automatic stay.

Rosenberg's motion should be denied for two reasons. First, on the current record, he cannot meet his burden to show that the debtor, The Vermeil LLC, has no equity in unit 1D of the Vermeil Condominium. Second, under the multifactor *Sonnax* test, Rosenberg cannot show that cause exists for relief from the automatic stay. On the contrary, a proper balancing of the relevant factors counsels that the question of the size of Rosenberg's lien should be determined in this Court.

**I.      Rosenberg Cannot Meet His Burden, On The Present Record, To Show That Debtor Has No Equity In Unit 1D**

Rosenberg's papers are unclear about whether he seeks to foreclose on both Units 1D and 1E, the two remaining unsold apartments in the Vermeil Condominium that Rosenberg alleges are still owned by debtor, who was the sponsor of the condominium offering. The record does not support any action to foreclose on Unit 1E, which was deeded outright to Rosenberg by

1

deed recorded in the county clerk's office.  No restriction appears on that deed.  A copy of the recorded deed is attached as Ex. A to this memorandum.  Rosenberg is listed on the condominium's books as owner of the unit, and he personally signed a typical condominium power of attorney to the Board, which is also recorded and which is attached hereto as Ex. B.

Rosenberg claims, via an unsworn statement by his attorney, that as part of a "Forbearance Agreement" he entered into in July 2010 with debtor's predecessor, "unit 1E was deeded to Rosenberg as security."  Motion, ¶ 4.  He does not attach the "Forbearance Agreement." The Board is not a party to the state court litigation between Rosenberg and debtor, but undersigned counsel retrieved a copy of the document from the state court files and presents it here as Ex. C  for the benefit of the Court.[1]  Nothing in the Forbearance Agreement supports Rosenberg's assertion that title to Unit 1E was conveyed solely as security for debtor's obligations under the $1 million note previously executed to Rosenberg. On the contrary, while the agreement is oddly worded and gave debtor's predecessor the right to sell Unit 1E for six months, it also provided in ¶ 4 that if debtor's predecessor failed to sell 1E, then "Rosenberg Rosenberg shall be free to sell Unit IE and enforce any rights that he may have under the Note and Mortgage for the amount total amount owed under the Note and Mortgage less any amount received from the sale of Unit IE."  Ex. C  hereto, ¶ 4.

Tellingly, the schedules filed by the debtor do not list 1E as among its assets.

Thus, since Rosenberg actually owns 1E and has done so since, at the latest, December 2010, at a minimum the value of that unit must be counted against any remaining obligation debtor may have under the note that may be secured by 1D.  Rosenberg attached a recent appraisal report to his motion putting the current value of 1E at $1,010,000.  The parties here

---

[1] Since Rosenberg had the burden of proof on this motion, his failure to provide the relevant documentation provides further ground to deny the motion.

have not had an opportunity to challenge that appraisal, and the referee's report is not binding on this or any other Court.

Alternatively, one could take the value of 1E as of either July 2010, and mark the note obligation down from that date. There is no evidence in the record in this Court as to what that value would have been, although the Real Property Transfer Report recorded along with the deed, and which listed Rosenberg as "buyer" (and bore his signature) put a value on it of $600,000. Ex. A.

That leaves the question of whether debtor has equity in 1D. "Under § 362(d)(2), "equity" means the difference between the value of the property and the total amount of claims that it secures." *In re Elmira Litho, Inc*., 174 B.R. 892 (Bankr. S.D.N.Y. 1994). The debtor's lack of equity is an element of Rosenberg's motion. *In re RYYZ, LLC*, 490 B.R. 29, 36 (Bankr. E.D.N.Y. 2013). "In order to determine that a debtor has no equity in property for purposes of Section 362(d)(2)(A), it must be shown that the debts secured by liens on the property exceed its value. Moreover, in accordance with Section 362(g), the burden of proof will be on the secured creditor moving for relief from the automatic stay to show the debtor's lack of equity." *In re Country Squire Assocs. of Carle Place, L.P*., 1997 Bankr. LEXIS 1163 *12 (B.A.P. 2d Cir. 1997) (citing *In re Indian Palms Association, Ltd.*, 61 F.3d 197 (3rd Cir. 1995).

On this issue, on which Rosenberg bears the burden of proof, he offers only speculation. After noting the appraisal of 1E mentioned above, Rosenberg (via his attorney's unsworn statement) says that Unit 1d "is most likely valued at a comparable amount." Motion, ¶ 15. An attorney's unexpert, unsworn opinion as to the value of real property is not evidence at all, let alone evidence sufficient to establish the property's value sufficiently to justify relief under § 362(d)(2).

Furthermore, Rosenberg's calculations as to the total amount of liens on 1D are also wildly speculative. First, he starts with the "Referee's own computation" listing the total amounts supposedly owed on the two units as $1,785,202.53 (Motion, ¶ 15), but that figure is not binding on this Court and will be sharply disputed by debtor. Rosenberg's assertion that "[a]ltogether, the Units are encumbered by approximately $3,000,000 in debt" (*id.*) is totally unsupported. He relies on an unrecorded mortgage in the amount of $1,000,000 listed in debtor's schedule, but as an unrecorded mortgage it cannot count as a lien for purposes of determining whether debtor has equity in the property under § 362(d)(2). *In re O.P.M. Leasing Services, Inc.,* 23 B.R. 104, 116 (Bankr. S.D.N.Y. 1982)(unperfected lien ineffective against trustee in his capacity as hyptothetical lien creditor).

The Board obtained and docketed a New York State judgment of $824,740 against debtor that was entered in the Kings County clerk's office August 7, 2015. This judgment does constitute a lien on all of debtor's real property within the county, including Unit 1D (CPLR 5203), but is potentially subject to avoidance as a preference since it was docketed only 31 days before debtor filed the instant bankruptcy petition. Debtor lists this as an unsecured, rather than secured, debt on its schedule, and calls it "disputed."

Therefore, in sum, Rosenberg has not met his burden of showing that debtor has no equity in Unit 1D, and for that reason alone his motion must be denied.

**II.     Cause Does Not Exist To Lift The Automatic Stay**

Rosenberg admits that the initial burden of demonstrating cause rests on him. We respectfully submit that if he cannot meet the standard of § 362(d)(2), the statute specifically crafted to deal with the fact scenario he advances, perforce he cannot establish cause under the more general § 362(d)(1).

Of the well-known factors enumerated in *In re Sonnax Indus.*, 907 F.2d 1280, 1286 (2d Cir. 1990), those that apply all weigh against lifting the stay. First, under *Sonnax* factor 1, the state court proceeding would interfere with the bankruptcy case, because the relief Rosenberg seeks would in effect liquidate the debtor's assets without any opportunity for any other creditor to be heard. Second, under *Sonnax* factor 4, the state court is not in any sense a "specialized tribunal." Third, under *Sonnax* factor 6, the action does not primarily involve third parties. Fourth, under *Sonnax* factor 7, litigation in the state court would prejudice the interests of other creditors, who would see their interests largely or even completely destroyed without any opportunity to be heard.

Fifth, under *Sonnax* factor 10, the interests of judicial economy and the expeditious and economical resolution of the litigation counsel concentrating these matters in one forum – this Court. Rosenberg's assertion in his motion that "the parties in the state court action have finally come to a compromise as to the amounts owed on the Units" (Motion, ¶ 19) seems crafted out of thin air. The state court litigation was hotly litigated, and shows no sign of being over merely because a referee has issued a report. A previous referee's report was vacated in the course of that proceeding, and debtor still can appeal. Thus, Rosenberg's assertion that "all that remains is to bring the state court action to a final judgment" (Motion, ¶ 19) appears nothing more than wishful thinking.

Finally, under *Sonnax* factor 12, the balance of harms counsels maintaining the stay, because any lien that Rosenberg has will be unimpaired while the respective interests of Rosenberg and other creditors are sorted out. Rosenberg's assertion that debtor will be unable to propose a confirmable plan of reorganization is speculation.

The determination whether to grant relief from the stay depends on the facts of each case and is committed to this Court's discretion. *Sonnax*, 907 F.2d at 1288. We respectfully submit that at this early stage of this bankruptcy case, the Court should deny Rosenberg's motion.

## CONCLUSION

For the foregoing reasons, Rosenberg's motion for relief from the automatic stay should be denied.

Dated: New York, New York
January 5, 2016

          **SCHWARTZ SLADKUS REICH GREENBERG ATLAS LLP**

By: \_\_\_\_/s/Stephen H. Orel_____
Stephen H. Orel *(sorel@ssrga.com)*
270 Madison Avenue
New York, New York 10016
Tel.: (212) 743-7049
Fax: (212) 743-7001

*Counsel for The Board of Managers of the Vermeil Condominium*

/797404.1